**No. 45480.**—Protest 961369–G of Atlas Marine Supply Co. (Los Angeles).

Opinion by CLINE, J. The record showed that the lubricating oil in question was exported from bonded warehouse under customs supervision without having been withdrawn previously from the custody or control of the Government. Although the containers were not legally marked when imported it was held that the merchandise is excepted from the provision assessing duty under section 304 (b). The protest was therefore sustained. *Atlas* v. *United States* (2 Cust. Ct. 491, C. D. 185) followed.

**No. 45481.**—Protest 987432–G of Fritzsche Bros., Inc. (New York).

Opinion by CLINE, J. The appraiser reported that the merchandise was incapable of being marked and that the bottles and the containers were legally marked at time of importation. On the authority of *Kraft* v. *United States* (22 C. C. P. A. 111, T. D. 47103) the protest was sustained.

**No. 45482.**—Protest 987209–G of Advance Solvents & Chem. Corp. (New York).

Opinion by CLINE, J. The appraiser reported that the demijohns and other containers were not marked. A cardboard tag was tied to the outer containers and since this is not a permanent form of marking it was required that the containers be stenciled to show the country of origin. On the record presented the protest was overruled.

**No. 45483.**—Petition 5993–R of Nagata Trading Co. (Los Angeles).

EVANS, Judge: This is a petition for remission of additional duties assessed because of the fact that the value declared on entry was less than that found on final appraisement of the imported merchandise. Authority for such petition is found in section 489, Tariff Act of 1930.

The merchandise consisted of rubber-soled canvas-top footwear from Japan imported during 1933. The question of the proper dutiable value of similar merchandise was the subject of investigation and appraisement was withheld

for a long time on that account. It was finally decided that the basis of appraisement was the American selling price. The importer in this case had entered at the foreign value as defined in section 402 (c), Tariff Act of 1930. When he was informed by the customs authorities that the value had been increased on his merchandise and that additional duties had been assessed because of undervaluation, the customs officials agreed that he should be given time to make payment of these additional duties. Under this agreement he started payments in 1936 on the basis agreed upon and continued them through the year 1937, but in 1938 he found it impossible to keep up his payments and petitioned the Treasury Department to accept, in lieu of the balance, the sum of $1,500 which sum he believed he could borrow from his friends. Subsequently he found he was unable to borrow the money and he was permitted by the Treasury Department to treat the remaining duties as uncollectible.

The instant petition asks that these unpaid additional duties which have accrued on certain enumerated entries be remitted.

The petitioner in his testimony stated that in entering his merchandise as he did he had no intention to defraud or to deprive the United States of any lawful revenue and that he did not conceal from or misrepresent any information to the customs officials.

It has been held that payment of the additional duties which may accrue under section 489, *supra*, is not a condition precedent to the filing of a petition for remission. *Ittmann Bros.* v. *United States*, 73 Treas. Dec. 529; T. D. 49481, citing *Frederick Richards* v. *United States*, 24 C. C. P. A. 243, T. D. 48670. In the *Richards* case, *supra*, the court said:

Since the amount has not, in fact, been paid, the granting of the petition will not result in a "refund" but in a "remission,"

The deputy collector at the port of entry in charge of the liquidating division corroborated the petitioner's testimony and stated that Mr. Nagata made an honest effort and did pay according to the schedule of payments agreed upon, but later, because of poor business he failed in his payment; the schedule of payments was rearranged, and finally he couldn't make payments as per schedule, and that the Department advised the customs authorities to treat the duties as uncollectible.

The appraiser also stated the facts in regard to the appraisement of the merchandise, viz, that appraisement was held up for a considerable length of time, first because there was a question of American selling price involved, and second there was a question of dumping. After the information had been secured as to the American selling price appraisement could not be made until the Secretary of the Treasury made a finding as to whether or not dumping existed. He stated further that he rarely, if ever, had any values with reference to the American selling price at the time the entries were made at which the importer could have entered his merchandise.

Upon this record it appears that the importer in entering his merchandise at a value less than that found on final appraisement was without intention to defraud or conceal the facts from the Government; that he acted in good faith. We therefore find that the petition should be granted as to the entries covered thereby. It is so ordered.